864 So.2d 288 (2003)
Tommy TURNER, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-CP-00836-COA.
Court of Appeals of Mississippi.
August 5, 2003.
Rehearing Denied October 14, 2003.
Certiorari Denied January 22, 2004.
*289 Tommy Turner, Jr. (Pro Se), for appellant.
Office of the Attorney General, by John R. Henry, for appellee.
Before SOUTHWICK, P.J., LEE, IRVING and MYERS, JJ.
IRVING, J., for the court.
¶ 1. Tommy Turner, Jr., in a pro se brief, challenges the denial of his motion for post-conviction relief by the Circuit Court of Lauderdale County. We find no error in the ruling of the trial court; therefore, we affirm.

FACTS
¶ 2. In 1999, a Lauderdale County grand jury indicted Turner for the felony of DUI manslaughter pursuant to section 63-11-30 of the Mississippi Code of 1972 as annotated and amended. Approximately two years later, Turner filed a petition in which he asked the Circuit Court of Lauderdale County to accept his plea of guilty to felony DUI manslaughter. The trial court accepted Turner's plea of guilty, convicted him of DUI manslaughter, and sentenced him to twenty years in the custody of the Mississippi Department of Corrections, with twelve years suspended, and to five years of supervised probation.
¶ 3. Subsequently, Turner filed a petition for post-conviction relief in which he alleged that his plea of guilty was entered unintelligently, that he received ineffective assistance of counsel, that he was denied a speedy trial, that there was no factual basis to support the plea, that the indictment was defective, and that the trial court erred in accepting the plea because the court failed to make sufficient inquiry to determine whether Turner understood the nature of the charge against him.
¶ 4. In a very detailed order, the trial court found, after a perusal of the applicable records, that the factual claims made *290 by Turner in his motion for post-conviction collateral relief were false and belied by the transcript of the plea hearing. Consequently, the trial court denied the requested relief without an evidentiary hearing.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 5. When reviewing a lower court's decision to deny a petition for post-conviction relief, this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999) (citing Bank of Mississippi v. Southern Mem'l Park, Inc., 677 So.2d 186, 191 (Miss.1996)). However, where questions of law are raised, the applicable standard of review is de novo. Id.
¶ 6. In his appeal, Turner argues that his plea of guilty was involuntary and was brought about by the ineffective assistance of counsel. He lists what he describes as several omissions of counsel to support his assertion. Turner first proclaims that his plea of guilty was not knowingly and intelligently made because his counsel failed to advise him of his right to a speedy trial. He further contends that he was denied due process of law because his indictment was defective and because neither the trial court nor his attorney advised him of the elements of the charge and the effect of the guilty plea upon the various trial rights constitutionally bestowed upon him. Moreover, he proclaims that there was no factual basis to support his guilty plea. Therefore, Turner concludes that the trial court erred when it denied him post-conviction relief.
¶ 7. A guilty plea must be made voluntarily in order to satisfy the defendant's constitutional rights. Taylor v. State, 682 So.2d 359, 362 (Miss.1996). "It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understands the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty." Reeder v. State, 783 So.2d 711, 717(¶ 20) (Miss. 2001) (citing Smith v. State, 636 So.2d 1220,1225 (Miss.1994)).
Denial of Speedy Trial
¶ 8. Turner alleges that he was denied due process when his counsel failed to inform him of his right to a speedy trial. He further asserts that no evidence exists to demonstrate he knowingly waived this right before pleading guilty. Turner points to the time span between the filing of his grand jury indictment on July 28, 1999, his conviction on April 3, 2001, and his sentencing on April 24, 2001, as evidence of his being denied a speedy trial. Because of this delay, Turner explains that he possessed a defense to the charge because the State failed to provide him with a speedy trial. Therefore, because his counsel did not inform him of this defense, Turner proclaims that he was prejudiced since he is now prohibited from asserting this defense. According to Turner, this foreclosure was proximately caused by his counsel's ineffective assistance and constitutes a denial of due process.
¶ 9. We find no merit in Turner's contention concerning his right to a speedy trial. First, the transcript of the guilty plea reveals that Turner was told that he had a right to "speedy public trial by a jury" and that by pleading guilty he waived that right. The transcript also reveals that the trial judge asked him if he wanted to waive that right, to which Turner answered in the affirmative. Second, as the trial court found, "regardless of the length of the delay between his indictment and sentencing, [Turner] entered a plea of guilty to the offense of DUI manslaughter, [and] a valid guilty plea waives the right to *291 a speedy trial, whether that right is of constitutional or statutory origin." Rowe v. State, 735 So.2d 399, 400(¶ 3) (Miss. 1999).
Advisement of the Elements of the Charge, and Consequences of the Plea
¶ 10. As a part of his argument that his guilty plea was not voluntary, Turner states that neither the trial court nor his attorney advised him of the elements of the charge or the rights he was forfeiting by entering the guilty plea. Turner asserts that he should have been informed as to what the State had to prove against him concerning a DUI death charge.
¶ 11. The record is clear that Turner was aware of the charge to which he pleaded guilty, as well as its elements, and that he knew the effect of a guilty plea upon his constitutional rights. The following exchange occurred between Turner and the trial court at the plea hearing:
Q: Okay. DUI manslaughter is a felony crime that carries a minimum and maximum possible punishment of from 0 to 25 years imprisonment in the penitentiary and a fine of 0 up to $10, 000. Do you understand that?
A: Yes, sir.
Q: Mr. Kieronski filed this guilty plea document that I'm looking at. It's called a petition to plead guilty. It was signed about a week ago. It has a signature right there of Tommy Turner, Jr. Is that your signature?
A: Yes, sir.
Q: Did you go over this guilty plea petition with your attorney before you signed it?
A: Yes, sir.
Q: Did you read this or did he read it to you?
A: Well, I read it and he read it to me.
Q: Do you understand it okay?
A: Yes, sir.
Q: Is the information that's in here truthful as far as you know?
A: Yes, sir.
Q: When you sign a document like this, it indicates to me that you want to plead guilty to this charge in accordance with a plea bargain. Is that what you want to do?
A: Yes, sir.
¶ 12. Subsequently to this exchange, the trial court spent some time informing Turner of the rights that he would be relinquishing as a result of his guilty plea. Specifically, the trial court explained his right to a speedy trial, his presumption of innocence if he decided to go to trial, his right to confront witnesses, his option to testify on his own behalf, his right to remain silent during proceedings, his right to have an attorney represent him, and his right to appeal if he were sentenced. When the trial court asked Turner whether he understood that he would waive these rights by pleading guilty, Turner answered in the affirmative. The trial court then asked, "Do you, in fact, want to waive all those rights and plead guilty in accordance with the plea bargain?" To this question, Turner answered, "Yes, sir."
¶ 13. Moreover, in regard to Turner's understanding of the elements of DUI manslaughter, the charge to which he was pleading, the trial court asked Turner, "Has he (Turner's attorney) explained to you the elements of the crime DUI manslaughter as well as any possible defenses that you might have to that charge?" Turner answered, "Yes, sir."
*292 ¶ 14. We therefore find no merit in Turner's contention that he was not adequately informed.
Factual Basis for the Charge
¶ 15. Rule 8.04(A)(3) of the Uniform Rules of Circuit and County Court requires that in order for the trial court to accept a guilty plea, there must be a factual basis for the guilty plea. Turner alleges that the State failed to establish a factual basis for the charge to which he pleaded.
¶ 16. We find no merit in this contention by Turner. The record clearly demonstrates that the State established a factual basis for the charge. At the plea hearing, the following conversation transpired between Turner and the trial court:
Q: Okay. I'm going to read you something that's in here (plea agreement), and I'm going to ask you some questions about it. Okay? Your petition says that back on February the 27th, 1999, in Lauderdale County, Mississippi, that you were operating a vehicle on the roads of the county with a breath alcohol content in excess of .10 and that while on Pine Springs Road, your vehicle collided with another vehicle and your passenger, Willie C. Jones died. Is that, in fact, a true statement? Did it happen in that way?
A: Yes, sir.
* * *
Q. Okay. This indictment says that your blood alcohol level was .29 percent when it was tested after the accidentshortly after the accident. Is that true as far as you know?
A. I wouldn't have no recollection.
* * *
Q. I assume they drew blood at the hospital during the normal course of treating you for your injuries.
A. Yes, sir. That's what he said.
Q. Is that your understanding that those blood tests showed that your alcohol level was at that level?
A. Yes. sir.
* * *
BY THE COURT: Okay. I need some evidence that there was, in fact, negligent operation of the motor vehicle whether the point of impact was over in the other lane, whether he was speeding, whether he crossed the double-yellow line.
BY MS. HOWELL: Judge, according to Officer Reeves, who is in accident reconstruction, he was in the other lane. It was a head-on collision.
BY THE COURT: And the impact took place in the other vehicle's proper lane of travel and not his?
BY MS. HOWELL: Right. And that would be Mr. (Unintelligible), his lane.
BY THE COURT: Okay.
¶ 17. A factual basis for a guilty plea may be established in a number of ways, including by a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, as well as an actual admission by the defendant although it is not necessary that the factual basis be established with words spoken from the defendant's own mouth. See Corley v. State, 585 So.2d 765, 767 (Miss.1991). We conclude, therefore, that the trial court did have before it enough to find an adequate factual basis for accepting Turner's guilty plea.
*293 Defective Indictment
¶ 18. Turner contends that the indictment was fatally defective in two respects: the charge was misidentified and the wrong subsection was specified. He avers that these flaws deprived the trial court of jurisdiction to hear his guilty plea. Consequently, he reasons that his guilty plea should be rendered null and void.
¶ 19. The first alleged defect concerns the caption of the indictment. The caption identifies the charge as "DUI Manslaughter." Turner argues that the indictment should have read "DUI negligent death statute." He also explains that the statutory provision for what he calls "the DUI negligent death statute," Mississippi Code Annotated section 63-11-30, was included directly under the caption. Turner asserts that this misidentification of the charge resulted in his not being properly informed of the charge against him.
¶ 20. We find this contention to be utterly without merit. As Turner points out, the proper statute, albeit the wrong subsection, was included in the indictment. But more importantly, the language contained in the body of the indictment makes it impeccably clear that Turner was charged with causing the death of his passenger while feloniously and negligently operating a vehicle under the influence of intoxicating liquor. The error in the identification of the subsection apparently resulted from a 1998 amendment which added a subsection to section 63-11-30 and renumbered some of the existing subsections. The language which had originally been contained in "subsection 4" was, after the amendment, contained in "subsection 5."
¶ 21. The charging part of the indictment reads:
That Tommy Turner, Jr.... did wilfully, unlawfully and feloniously operate a vehicle while under the influence of intoxicating liquor, while having a 0.29 alcohol level in his blood ... [and] that Tommy Turner, Jr. operated a motor vehicle in a negligent manner by driving on the wrong side of a public road, thereby causing an accident resulting in the death of Willie C. Jones, who was a passenger in Tommy Turner, Jr.'s vehicle.
¶ 22. If an indictment reasonably provides the accused with actual notice and it complies with Rule 7.06 of the Uniform Circuit and County Court Rules, it is sufficient to charge the defendant with the crime. See McNeal v. State, 658 So.2d 1345, 1350 (Miss.1995). We find that Turner's indictment met this standard. Moreover, "a valid guilty plea admits all elements of a formal charge and operates as a waiver of all non-jurisdictional defects contained in an indictment or information against a defendant." Reeder v. State, 783 So.2d 711, 720(¶ 36) (Miss.2001). The specification of the wrong subsection in an indictment is not a fatal flaw, particularly where the defendant clearly had notice of the charges against him. Rigby v. State, 826 So.2d 694, 703-04(¶ 19) (Miss.2002).
¶ 23. For the reasons set forth in this opinion, we find that the trial court did not err in dismissing Turner's complaint as lacking merit. Therefore, we affirm the trial court in every aspect.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, *294 THOMAS, LEE, MYERS AND GRIFFIS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.